Case 4:21-cv-02921 Document 17 Filed on 02/07/23 in TXSD Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
February 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANQUESHA SHONTAE MORAE RAINEY, | § § § § | |
| Plaintiff. | § § | CIVIL ACTION NO. 4:21-cv-02921 |
| V. | § § | |
| KILOLO KIJAKAZI, *Acting Commissioner Social Security Administration*, | § § § § § | |
| Defendant. | § | |

## OPINION AND ORDER

Plaintiff Tranquesha Shontae Morae Rainey ("Rainey") seeks judicial review of an administrative decision terminating her disability benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Rainey and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 14, 15. After reviewing the briefing, the record, and the applicable law, I **DENY** Rainey's motion for summary judgment (*see* Dkt. 14), and **GRANT** the Commissioner's motion for summary judgment (*see* Dkt. 15).

## BACKGROUND

The Commissioner originally determined Rainey to be disabled on June 20, 2010, with a period of disability beginning March 31, 2009. At that time, Rainey was found to have a medically determinable impairment—affective mood disorder—that resulted in a residual functional capacity ("RFC") of being unable to complete a normal work week without interference from psychological based symptoms. Because this June 2010 determination was the Commissioner's most recent favorable decision for Rainey, it is known as the comparison point decision

("CPD"). The Act requires that a claimant's case be periodically reviewed to determine whether the claimant's disability has continued. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). On August 13, 2015, a disability examiner determined that Rainey's disability had ceased on August 1, 2015. *See* Dkt. 7-5 at 4–5. Rainey appealed this decision. On November 4, 2020, an Administrative Law Judge ("ALJ") held a hearing and found that Rainey had medically improved and was no longer entitled to disability benefits. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

Once an individual becomes entitled to disability benefits, her continued entitlement to benefits must be reviewed periodically. The Commissioner may terminate benefits to a person previously adjudged to be disabled upon substantial evidence that the individual's condition has improved such that "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1). In determining whether the cessation of benefits is appropriate, the ALJ must follow an eight-step sequential analysis:

> (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement of the impairment; (4) whether any medical improvement is related to the claimant's ability to work; (5) whether an exception to medical improvement applies; (6) whether the impairment is severe; (7) whether the impairment prevents the claimant from doing past relevant work; and (8) whether the impairment prevents the claimant from doing any other work.

*Trejo v. Kijakazi*, No. 4:20-CV-2808, 2022 WL 943045, at *2 n.5 (S.D. Tex. Feb. 10, 2022) (citing 20 C.F.R. § 404.1594(f)). Throughout this analysis, "the Commissioner bears the ultimate burden of proof." *Everett v. Saul*, No. 4:21-CV-01535, 2022 WL 3719982, at *4 (S.D. Tex. Aug. 29, 2022) (citing 20 C.F.R. § 404.1594(f); *Griego v. Sullivan*, 940 F.2d 942, 944 n.1 (5th Cir. 1991)).

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Yet, even if the ALJ commits error, remand is not warranted if "[i]t is inconceivable that the ALJ would have reached a different conclusion on [the] record." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

## THE ALJ'S DECISION

The ALJ found at Step 1 that Rainey had not engaged in substantial gainful activity through the date of the ALJ's decision. *See* Dkt. 7-3 at 19.

At Step 2, the ALJ found that Rainey "has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926)." *Id.* at 20.

At Step 3, the ALJ found that "by August 1, 2015, there was a decrease in medical severity of the impairment present at the time of the CPD." *Id.* at 22.

3

Specifically, the ALJ found that "the impairment present at the time of the CPD had decreased in medical severity to the point where [Rainey] has had the residual functional capacity to complete a normal work week without interference from psychological-based symptoms." *Id.*

At Step 4, the ALJ found that Rainey's "medical improvement is related to the ability to work because it has resulted in an increase in [Rainey]'s residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b)(2)(iv)(B))." *Id.*

Step 5 applies only if "there has been no medical improvement," or if "the medical improvement is not related to [the claimant's] ability to work." 20 C.F.R. § 404.1594(f)(5). Because the ALJ found medical improvement, she did not discuss this step.

At Step 6, the ALJ found that Rainey's current impairments are severe, meaning her "mental impairments caused more than minimal limitation in [Rainey's] ability to perform basic work activities." Dkt. 7-3 at 22.

Between Step 6 and Step 7, the ALJ found that:

> Since August 1, 2015, based on the current impairments, [Rainey] has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to moderate limitations in [Rainey's] ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself, [Rainey] is limited to performing simple, routine, repetitive work with 1-, 2-, or 3- step instructions; limited to only occasional interaction with coworkers and supervisors; limited to no contact with the public; no fast production-paced work; and no strict production quotas.

*Id.* At Step 7, the ALJ found that Rainey has been unable to perform past relevant work as a home health provider. *Id.* at 27.

At Step 8, the ALJ found that "[s]ince August 1, 2015, considering [Rainey's] age, education, work experience, and residual functional capacity based on the current impairments, [Rainey] has been able to perform a significant number of

4

jobs in the national economy." *Id.* Based on the Medical-Vocational Rules, the ALJ explained that Rainey is not disabled. *See id.* at 27–29.

## DISCUSSION

Rainey advances a number of arguments for why this case should be remanded. None are persuasive. I will address each in turn.

### A. THE ALJ WAS NOT REQUIRED TO CITE THE CPD

First, Rainey argues that "the actual CPD is not in the record." Dkt. 14-1 at 1; *see also id.* at 5 ("[T]he [CPD] . . . is NOT in the record."). This statement is false. The CPD is in the record. *See* Dkt. 7-5 at 2–3. Nevertheless, Rainey is correct that the ALJ "does not cite to the actual CPD to support [her] findings." Dkt. 14-1 at 5. Rather, the ALJ references a June 10, 2010 psychological assessment by Don Marler, Ph.D. ("Dr. Marler"). Rainey argues that the ALJ's failure to explicitly cite the CPD—as opposed to Dr. Marler's assessment—"prevents proper judicial review." *Id.* This argument is frivolous. The CPD is a two-page form that merely states Rainey's primary diagnosis as "Affective/Mood disorders." Dkt. 7-5 at 2. Moreover, Dr. Marler's assessment is explicitly referenced in the CPD. *See* Dkt. 7-5 at 2–3 (referencing Dr. Marler's assessment in boxes 32 and 33). To glean any substance, the ALJ had to look to Dr. Marler's assessment. Accordingly, it was not error for the ALJ to cite to Dr. Marler's assessment rather than the CPD itself. Even if it were error, such error would be harmless because, as Rainey acknowledges *arguendo*, "the prior CPD was based on [Rainey's] affective mood disorder, and results in an inability to complete a normal work week without interference, as Dr. Marler's medical report states, and the ALJ finds." Dkt. 14-1 at 6; *see also Frank*, 326 F.3d at 622 (remand is warranted only if it is conceivable "that the ALJ would have reached a different conclusion on [the] record").

### B. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT RAINEY EXPERIENCED MEDICAL IMPROVEMENT IN AUGUST 2015

Rainey next argues that the ALJ provided no explanation "for her finding that [Rainey's] disability ended specifically on [August 1, 2015]." Dkt. 14-1 at 6. The

5

ALJ's one-sentence explanation for her finding is indeed scant: "The medical evidence supported a finding that, by August 1, 2015, there was a decrease in medical severity of the impairment present at the time of the CPD." Dkt. 7-3 at 22. However sparse though, the ALJ's statement is true—medical evidence in the record from August 2015 indeed substantiates that Rainey experienced medical improvement in August 2015. Specifically, in August 2015, psychological consultant Julian Lev, Ph.D. ("Dr. Lev") conducted an evaluation that included a phone call with Rainey. The ALJ summarized Dr. Lev's notes, which showed that Rainey "was taking medications and doing well"; "reported she was no longer paranoid about people out to get her and she did not experience any more panic attacks, nightmares, or voices in her head"; and "had normal abilities to complete and perform daily living activities." Dkt. 7-3 at 26 (citing Dkt. 7-15 at 61). Rainey's own disclaimer of paranoia, panic attacks, nightmares, and hearing voices in August 2015 clearly supports finding a "decrease in the medical severity of [the] impairment[] which was present at the time of the most recent favorable medical decision that [she was] disabled." 20 C.F.R. § 404.1594(b)(1).

In her reply, Rainey argues that "[a]ny reliance upon [Dr. Lev's] opinion is not based upon substantial evidence" because Dr. Lev opined that Rainey's impairments were not severe, whereas the ALJ found that Rainey's mental impairments were severe.[1] Dkt. 16 at 8. But the ALJ addresses this issue head-on:

> I found Dr. Lev's assessment persuasive as it was supported by [Rainey]'s reported lack of treatment at that time. Dr. Lev's assessment was consistent with [Rainey]'s reports of lessened symptom severity. However, the evidence received at the hearing level noted [Rainey]'s continued exacerbation of symptoms following drug use and when she was not taking medications. Thus, I determined

---

[1] In making this argument in her reply, Rainey appears to have abandoned the (erroneous) argument she advances in her motion for summary judgment that "the ALJ fails to identify whether these impairments are 'severe' within the meaning of the [Act]." Dkt. 14-1 at 6. As the Commissioner notes, "the ALJ specifically stated that these impairments significantly limited [Rainey]'s ability to perform basic work activities [*see* Dkt. 7-3 at 20], which is indicative of the ALJ finding these impairments to be severe." Dkt. 15-1 at 11 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling (SSR) 85-28).

> [Rainey]'s need for these prescribed medications to control symptoms was indicative of severe mental impairment.

Dkt. 7-3 at 26. The ALJ's finding that Rainey's impairment is severe does not negate Rainey's medical improvement in August 2015. Indeed, that is why the issues of medical improvement, the severity of impairments, and whether impairments prevent a claimant from doing past relevant work or any other work are each separate steps in the ALJ's analysis. *See* 20 C.F.R. § 404.1594(f).

Additionally, in an August 2015 Adult Function Report, Rainey wrote: "I can work" and "I do all thing [sic] by my self." Dkt. 7-12 at 39–40. In that same report, Rainey disclaimed needing special reminders to take care of personal needs and grooming; indicated that she prepares complete meals for herself daily; stated that she goes outside every day, can go out alone, and drive a car; indicated that she shops in stores, by phone, and by computer; indicated that she can pay bills, count change, and handle a savings account; stated that she likes to read, watch movies, and listen to music; indicated that she spends time with others by talking on the phone and going to church, and disclaimed that she needs anyone to accompany her; stated that she gets along well with authority figures, the police, and her boss "when [she] had one"; and stated that she handles changes in routine "well." *Id.* at 42–44, 46. That report gave Rainey an opportunity on nearly every page to state how her condition might affect her ability to work, take care of herself, or get along with others. Yet the only limitation Rainey indicated was "sometimes I need help taking my medicine." *Id.* at 42. Accordingly, the August 2015 Adult Function Report provides further evidence supporting the ALJ's decision to find that Rainey experienced medical improvement in August 2015.

C. **SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC**

Rainey next argues that "there is no medical opinion of record which supports the ALJ's current RFC." Dkt. 14-1 at 7. First Rainey contends that the ALJ failed to recognize all of Rainey's hospitalizations. But the ALJ explicitly acknowledges that Rainey "had 9 psychiatric hospitalizations between March 2014

and January 2020," which is three more hospitalizations than Rainey discusses in her motion for summary judgment. Dkt. 7-3 at 24.

Next, Rainey argues that the ALJ's RFC "fails to accommodate for the repeated references to [Rainey]'s continued auditory and visual hallucinations, which will result in periods of 'off task' time during work." Dkt. 14-1 at 8. But the ALJ's opinion is replete with references to Rainey's auditory and visual hallucinations. *See* Dkt. 7-3 at 24–26. Thus, the ALJ was certainly aware of this impairment. The ALJ was also aware that these hallucinations are not as limiting as Rainey contends. *See* Dkt. 7-3 at 25 (noting that both in February and April 2020, Rainey reported auditory hallucinations, "but denied any paranoid delusional thinking or delusions or ideas of reference"). And the ALJ was aware of the times that Rainey disclaimed hallucinations entirely. *See* Dkt. 7-3 at 24 (citing "[m]ental status examinations throughout the record" that "indicated [Rainey] demonstrated no signs of mania, depression, anxiety, or psychosis and there was no evidence of fixed delusions, paranoia, or hallucinations noted"). The ALJ also "made careful notes" of findings that Rainey "was still experiencing occasional episodes of auditory hallucinations and difficulties with worrying but denied any recent episodes of anxiety attacks" and "demonstrated intact memory, good attention span and concentration, good insight and judgment, and intact functional and cognitive statuses." *Id.* at 26. Rainey's hallucinations are impairments to be sure, but there is substantial evidence for the ALJ's finding that they do not limit her ability to work.

Rainey next takes issue with the fact that the ALJ's RFC limits Rainey to occasional interaction with coworkers and supervisors, but no contact with the public. Rainey claims "the ALJ provides no reasoning for [her] distinction regarding [Rainey]'s ability to work with the public, versus her ability to work with supervisors and co-workers." Dkt. 14-1 at 8. This is simply incorrect. The ALJ specifically noted that Rainey herself "reported she could [] deal appropriately with authority figures and she could handle changes in routine well." Dkt. 7-3 at 28.

8

This is ample reasoning for crafting an RFC that permits interaction with supervisors and co-workers but not the general public.

Lastly, Rainey argues that "there was no medical opinion evidence to support the functional restrictions found by the ALJ." Dkt. 14-1 at 9. Rainey believes the ALJ should have obtained "a more recent psychological consultative evaluation by Dr. Marler, or any other mental health expert prior to making [her] RFC finding." *Id.* Yet, as the Commissioner highlights, Rainey "does not identify a Fifth Circuit case under the prior regulatory framework that indicated it was the Court's intent to require the Commissioner to obtain the RFC finding directly from a medical opinion, thereby nullifying the ALJ's role as fact-finder." Dkt. 15-1 at 12. Moreover, the Fifth Circuit "has held that the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. Instead, the salient issue is whether substantial evidence exists in the record to support the ALJ's decision." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citing *Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995)).

"A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Ramirez*, 606 F. App'x at 777. For all the reasons discussed above, and one more, I am unable to find "a conspicuous absence of credible choices" for the ALJ's RFC finding. *Id.* Rainey would have me find that her hospitalizations, hallucinations, and suicidal ideations are contrary medical evidence that warrant a finding of no substantial evidence. *See* Dkt. 14-1 at 9. But Rainey overlooks the careful attention the ALJ gave to the extent to which Rainey's "symptoms were exacerbated when drug abuse was present or [Rainey] was noncompliant with medications." Dkt. 7-3 at 28. It is for the ALJ to weigh the evidence, not me, and this explanation substantiates why the ALJ rightfully discounted the evidence that Rainey would have me find contrary. Accordingly, I find that there was substantial evidence to support the ALJ's RFC.

## CONCLUSION

For the reasons stated above, Rainey's motion for summary judgment (*see* Dkt. 14) is **DENIED**, and the Commissioner's motion for summary judgment (*see* Dkt. 15) is **GRANTED**.

SIGNED this 7th day of February 2023.

                          ANDREW M. EDISON
                 UNITED STATES MAGISTRATE JUDGE